**ALEXANDER KRAKOW + GLICK LLP**
J. Bernard Alexander, III (State BarNo.128307)
Joshua M. Arnold (State Bar No. 240154)
401 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
T: 310 394 0888 | F: 310 394 0811
E: balexander@akgllp.com | jarnold@akgllp.com

Attorneys for Plaintiff
MELVIN GLAPION

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MELVIN GLAPION, an individual, | Case No. |
| Plaintiff, | COMPLAINT FOR DAMAGES: |
| vs. | 1) Sexual Orientation Discrimination;<br>2) Sexual Orientation Harassment;<br>3) Race Discrimination |
| KROLL ASSOCIATES INC., a Delaware Corporation; KROLL INCORPORATED, a Delaware Corporation;  CORPORATE RISK HOLDINGS, LLC., a Delaware limited liability corporation; PROVIDENCE EQUITY PARTNERS LLC.; a Delaware limited liability company; and DOES 1 through 100, inclusive, | 4) Religious Discrimination<br>5) Retaliation for Complaints of Sexual Orientation Harassment and Discrimination<br>6) Failure to Prevent and/or Remedy Discrimination, Harassment and Retaliation (Gov. Code §12940(k));<br>7) Retaliation in Violation of California Labor Code § 1102.5;<br>8) Violation of Whistleblower Protection under the Sarbanes Oxley Act (18 U.S.C. § 1514A, et seq.); |
| Defendants. | 9) Violation of Whistleblower protections of the Dodd-Frank Act Wall Street Reform and Consumer Protection Act (15 U.S.C. §78u-6);<br>10) Defamation.<br>11) Wrongful Termination in Violation of Public Policy; |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff MELVIN GLAPION ("Plaintiff") complains and alleges as follows:

1

**INTRODUCTION**

Plaintiff Glapion, a gay black man, joined KROLL INC.'s London office in 2010 as managing director.  As a result of his stellar performance in London, in late 2013, the head of North American operations invited Plaintiff to take over responsibility for the Kroll office in Los Angeles ("Kroll Los Angeles" or "Kroll Associates").  As with London, reform of the Los Angeles office required identifying underperforming employees and ending their employment with Kroll.

Plaintiff terminated three employees in Los Angeles without incident, but he received a dramatically different response when he attempted to terminate white straight Jewish employees.   After this, members of management participated in discriminatory conversations about Plaintiff that focused on his sexual orientation and implied that, as a gay black man, he was targeting straight whites.  When Plaintiff complained about this discrimination, upper management and HR failed to take action on his complaints.

On June 2, 2015, Plaintiff informed CEO Manny Conti that Plaintiff had lodged a complaint with the SEC regarding Vipshop, a Chinese e-business listed on the New York Stock Exchange ("NYSE").   Following this disclosure, Conti instructed Plaintiff to meet with external counsel regarding this SEC complaint, and he was grilled for several hours.  On June 16, 2015, Defendant terminated Plaintiff's employment.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

**PARTIES**

1.       Plaintiff MELVIN GLAPION ("Plaintiff" or "Glapion") is, and at all relevant times mentioned herein was, an individual residing in the State of California, City of Los Angeles.  Plaintiff was employed by Defendant KROLL INCORPORATED ("Kroll INC.") and Defendant KROLL ASSOCIATES INCORPORATED ("Kroll Los Angeles" or "Kroll Associates") from

approximately 2010 through June 16, 2015, working his way to the position of the head of the Los Angeles office.

2.      Plaintiff is informed and believes and based thereon alleges that Defendant KROLL INCORPORATED is, and at all times mentioned, was a Delaware corporation headquartered in New York and doing business in the State of California, city of Los Angeles.

3.      Plaintiff is informed and believes and based thereon alleges that Defendant KROLL ASSOCIATES INCORPORATED is, and at all times mentioned, was a Delaware corporation doing business in the State of California, city of Los Angeles.

4.      Plaintiff is informed and believes and based thereon alleges that Defendant ALTEGRITY INCORPORATED ("Altegrity"), is and at times mentioned herein was a Delaware corporation headquartered in the state of New York and doing business in Los Angeles. At times mentioned herein, Altegrity was Kroll's corporate parent company.

5.      Plaintiff is informed and believes and based thereon alleges that Defendant CORPORATE RISK HOLDINGS, LLC., is and at all  times mentioned was a Delaware limited liability corporation headquartered in the state of New York and doing business in Los Angeles. At times mentioned herein, Corporate Risk Holdings, LLC was Kroll's corporate parent company.  Corporate Risk Holdings, LLC operates as a subsidiary of Altegrity Inc.

6.      Plaintiff is informed and believes and based thereon alleges that Defendant PROVIDENCE EQUITY PARTNERS LLC ("Providence"), is and at all times mentioned herein was a Delaware limited liability corporation headquartered in the state of Rhode Island and doing business in Los Angeles. At times mentioned herein, Defendant Providence was Kroll's corporate parent company.

7.      At all relevant times, Defendants were employers as defined by

1    sections 12926 and 12940 of the California Fair Employment and Housing Act.

2    With respect to Plaintiff's claims for compensatory and punitive damages,

3    Defendants are employers of more than five hundred (500) persons.

4          8.     Section 2(H) of Industrial Wage Commission ("IWC") Order

5    Number 4-2001 defines an "employer" as any "person as defined in Section 18 of

6    the [California] Labor Code, who directly or indirectly, or through an agent or any

7    other person, employs or exercises control over the wages, hours, or working

8    conditions of any person."   Plaintiff is informed, believes, and alleges that

9    Defendants directly, indirectly, or acting through the agency of each other, employ

10   or exercise control over Plaintiff's wages, hours, or working conditions.

11   Specifically, Defendants direct and control, with the assistance of or through the

12   other named Defendants, the terms and conditions of Plaintiff's employment.

13   Accordingly, Defendants are deemed to be Plaintiff's joint employers.

14         9.     Plaintiff does not know the true names or capacities of the

15   Defendants sued as DOES 1 through 50, inclusive, and by reason thereof sues these

16   Defendants under such fictitious names.  When their true names and capacities have

17   been ascertained, Plaintiff will amend this Complaint to reflect the same.  Plaintiff is

18   informed and believes and based thereon alleges that such fictitiously named

19   Defendants were the agents, servants, and employees of each of the named

20   Defendants and, in doing the acts and things hereinafter alleged, were at all times

21   acting within the course and scope of said agency, servitude, and employment and

22   with the permission, consent, and approval, or subsequent ratification, of each of the

23   named Defendants.  Plaintiff further alleges that Defendants constituted an

24   "integrated enterprise" and "integrated employers" with interrelated operations,

25   common management, centralized control of labor relations, and common

26   ownership and/or financial control.  Plaintiff also alleges that the Defendants were,

27   at all times relevant hereto, the alter egos of each other, and/or the agents of each

28

4

other.  Whenever reference is made to Defendants, it is intended to include all of the named Defendants as well as the DOE Defendants.  Each of the fictitiously named DOE Defendants is responsible in some manner for the occurrences alleged and proximately caused Plaintiff's damages.

## EXHAUSTION OF REMEDIES

10.     On September 1, 2015, Plaintiff filed a timely complaint under the Sarbanes-Oxley with the Department of Labor's Occupational Health and Safety Administration ("OSHA"). On October 20, 2015, The Department of Labor, through its agent, issued a finding that Defendants Kroll Inc., Kroll Associates Inc. Altegrity, Inc., and Providence Equity Partners, LLC, were not publically traded companies, or fell within the meaning of 18 U.S.C. § 1514A, because Defendants do not possess securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) and is required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. §78o(d)).Plaintiff timely appealed these findings before an Administrative Law Judge on November 16, 2015.  The appeal is proceeding.

11.     Plaintiff has filed a timely charge of discrimination with the California Department of Fair Employment and Housing, and has received a "right-to-sue" notice for all state law discrimination claims alleged herein. This suit is brought within one year of Plaintiffs "right-to-sue" letter.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action because Plaintiff s claims arise under federal statutes.  This Court has subject matter jurisdiction over these claims pursuant to the Sarbanes Oxley Act as codified in 18 U.S.C. § 1514A, et seq. and the Whistleblower protections of the Dodd-Frank Act Wall Street Reform and Consumer Protection Act in 15 U.S.C. §78u-6 which vests federal jurisdiction in the District court. Venue is appropriate because the actions which

form the basis for Plaintiff s claims occurred in Los Angeles, which is within this District.

13.     This Court has general personal jurisdiction over Defendants because, at all relevant times, Defendants had systematic and continuous contacts with the State of California.  Defendants are registered to do business in California and are participating in major business operations in California.  This Court also has specific personal jurisdiction over Defendants because the claims in this action all stem from Defendants' specific contacts with the State of California, namely the control they exercised over Plaintiff in Los Angeles, California.

14.     Additionally, this Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1337.  As set forth in the paragraphs below, the amount in controversy is at least $250,000.

15.     Venue is proper in the Central District of California because Plaintiff's claim for relief arose out of Defendants' control of Plaintiff in Los Angeles, California, where all relevant events and omissions supporting Plaintiff's claims for relief occurred.

## DEMAND FOR JURY TRIAL

16.     Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

17.     Kroll hired Plaintiff as managing director of Kroll's London office in 2010.  As a result of Plaintiff s successful management and staff reorganization in London, he was asked to move to the Los Angeles office.   Mr. Glapion began working in the Los Angeles office in October 2013 and by January 2014 was working exclusively in Los Angeles.

18.     By late 2013, Plaintiff had supervised the Los Angeles employees for a sufficient time to begin the reorganization of the office.  After this

review, he recommended three employees be terminated due to their performance, and management was supportive of these terminations.

19.     In August 2014, Kroll CEO Manny Conti requested that office heads rate their employees' performance.   Plaintiff identified one employee remaining in his office as a poor performer.  This was the first Jewish employee that Plaintiff had recommended for performance-based termination, and the reaction to this recommendation was starkly different.  Although North America HR director Dan Watson had previously acknowledged that the obvious shortcomings of this employee's performance meant that creation of a Performance Improvement Plan ("PIP") was futile, and that termination should proceed immediately, other members of management objected and announced their intention to "establish a task force" to save this employee.  Despite the acknowledgement that such an effort was futile, Plaintiff was instructed to prepare a PIP.

20.     Mr. Glapion issued the PIP as directed.  However, rather than work to meet the PIP goals, the failing employee contacted San Francisco Director Betsy Blumenthal and other non-LA office employees in an effort to save his job rather than do his job. Not only was he not disciplined for this departure from the PIP, he was given multiple extensions on his deadline to achieve the goals set by the PIP, partially as a result of Blumenthal moving to interfere in the PIP at his behest.

21.     During this same time frame, members of Kroll Los Angeles upper management began to direct discriminatory comments toward Plaintiff. Director Mark Noellinger commented to a co-worker that Plaintiff was "hunting straight white males" who did not fit with his vision of a "gays-only office." Noellinger also implied that Plaintiff was dating a male coworker, a false allegation. Remarks such as these were made to members of Plaintiff's office, and occurred in both conversations and email exchanges. These discriminatory comments made Plaintiff concerned for his own future at Kroll.

22.     The PIP had been scheduled to last for only 8 weeks, but with extensions wound up lasting almost 8 months. Eventually, the underperforming employee was terminated in April 2014, but only after he was paid 9 months' salary as severance. In the wake of this termination, more defamatory remarks were directed at Plaintiff. Blumethal announced to her staff that she was "ashamed" of the fact that Plaintiff had terminated the underperforming employee, and implied that it was a personal vendetta on the part of Plaintiff.

23.     After the termination, Plaintiff reviewed the emails of the departed employee, and discovered a number of anti-gay comments as well as emails from managers encouraging Plaintiff's subordinate to undermine Plaintiff and ignore the PIP.

24.     As a result of discovering these management level emails, Plaintiff contacted human resources in May 2015 on at least three separate occasions and requested that telephonic meetings be scheduled with the authors of the comments. However, despite repeated requests by Plaintiff, Kroll HR took no action.

25.     Not only did Kroll management fail to respond to Plaintiff's repeated phone call inquiries, with each successive call to management or HR, the recipient of the call professed ignorance of the information Mr. Glapion had previously conveyed. To remedy these efforts at feigned ignorance, on May 29, 2015, Plaintiff contacted CEO Conti directly, but was again told they would need more time to consider the issue.

26.     In research conducted on his own time in March 2015, Plaintiff had discovered that a company named Vipshop, a Chinese e-business listed on the New York Stock Exchange ("NYSE"), had published earnings reports that contained deliberate misstatements. Mr. Glapion reported these inaccuracies to the SEC and wrote an article about it under a pseudonym of Mithra Research on the

crowd-sourced investment newsletter website Seeking Alpha.

27.     On or about the second day of June 2015, Plaintiff was contacted by Betsy Blumenthal about the anonymous report Plaintiff had authored on Vipshop. After hearing from Blumenthal, Mr. Glapion promptly disclosed his SEC report to CEO Conti, as well as a previous report he had made to the SEC.

28.     In disregard of Sarbanes-Oxley rules, Kroll launched an "investigation" of this report and the accompanying article by Mr. Glapion. On or about June 3, 2015, Plaintiff requested an update on the status of HR's discrimination investigation from Lisa Carey, and was told that she would need to "speak to Manny."

29.     On June 4, 2015, a meeting occurred regarding Kroll's investigation into Plaintiff's SEC complaints and the article exposing Vipshop. Plaintiff was later told by CEO Conti that the investigation into Plaintiff's work on Vipshop had uncovered violations of Kroll Inc.'s company policy.  Conti claimed that Plaintiff's use of his computer and the Kroll logo were violations, but Conti was forced to acknowledge that Kroll had previously granted permission for Plaintiff to use his computer and the Kroll logo for outside work.  The second claim was simply that Plaintiff's work had harmed a client who had invested in Vipshop.  In short, Conti informed Plaintiff that it was a violation of Kroll's policy to oppose fraud.

30.     On June 16, 2015, these purported violations were invoked by Kroll as justification for termination of Plaintiff.  Plaintiff requested to know what had been done regarding the complaints he had made with respect to the discrimination.  Conti insisted an "investigation" had been conducted.  Plaintiff noted that no one had ever done a detailed interview with him, nor told him of any outcome in this "investigation."  Conti then changed his position, and stated that Plaintiff was only raising this because he was being terminated from his employment.

31.     Defendants discriminated against, harassed, and ultimately terminated Mr. Glapion for his race, sexual orientation, religion, and in retaliation for his complaints of discrimination and other unlawful conduct including violation of the three key tenets of the Dodd-Frank act.

32.     On or around September 2010, Kroll Inc. was sold by Marsh & McLennan Cos Inc. to Altegrity Inc. At all relevant times herein, Altegrity Inc. was backed by private equity firm Providence Equity Partners.

33.     In February of 2015, Altegrity Inc. filed for Chapter 11 Bankruptcy in Delaware federal court after losing several government contracts due to fraud. In August 31, 2015, Altegrity Inc. completed financial restructuring and emerged from Chapter 11 protection. Altegrity Inc. emerged from bankruptcy restructuring as Corporate Risk Holdings. Upon information and belief, after this restructuring, Kroll Inc. is now completely owned by Corporate Risk Holdings Inc.

## FIRST CAUSE OF ACTION

### (Sexual Orientation Discrimination)

### (Against All Defendants)

34.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

35.     This cause of action is based upon Cal. Government Code §12940, including §12940(a), which makes it an unlawful employment practice for an employer, because of a person's sexual orientation, to refuse to hire or employ the person, to bar or discharge the person from employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

36.     Plaintiff has met all of the jurisdictional requirements for proceeding with his claims under the California Fair Employment and Housing Act by filing charges that defendants discriminated against him and terminated his

10

employment because of his sexual orientation in violation of the California Fair Employment and Housing Act.  Plaintiff was issued a Notice of Case Closure/Right-to-Sue Letter which granted Plaintiff the right to bring suit against Defendants.

37.     At all times herein mentioned, Cal. Government Code §12940 was in full force and effect, and was binding upon Defendants.  Defendants violated this code section by taking adverse action against Plaintiff because of his sexual orientation, including but not limited to terminating Plaintiff's employment.

38.     As a direct, foreseeable, and proximate result of the conduct complained of in this cause of action, Plaintiff has suffered, and continues to suffer, loss of salary, benefits and bonuses plus expenses incurred in obtaining substitute employment and not being regularly employed for months, all to plaintiff's damage in a sum within the jurisdiction of this court, to be ascertain according to proof.

39.     As a further direct and proximate result of said defendants' unlawful discrimination, plaintiff has suffered and continues to suffer from emotional and mental distress, and has incurred and continues to incur special and general damages, in a sum within the jurisdiction of this court, to be ascertained according to proof.

40.     Plaintiff also prays for reasonable costs and attorney fees against said defendants, as allowed by California Government Code §12965 and any other applicable statutes for plaintiff's prosecution of this action in reference to the time plaintiff's attorney spends pursuing this cause of action as well as any other applicable statutes.

41.     Plaintiff is informed, believes, and based thereon, alleges that the outrageous conduct of said Defendants described above were done with oppression and malice by the Plaintiff's supervisor and managers and were ratified by those other individuals who were managing agents of said Defendant employers. These unlawful acts were further ratified by the Defendant employers and done with a

conscious disregard for the Plaintiff's rights and with the intent, design and purpose of injuring the Plaintiff.  By reason thereof, the Plaintiff is entitled to punitive or exemplary damages against said Defendants, and each of them, for their acts as described in this cause of action in a sum to be determined at the time of trial.

## SECOND CAUSE OF ACTION

### (Sexual Orientation Harassment)

### (Against All Defendants)

42.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

43.     As alleged herein and in violation of California Government Code § 12940(j), Defendant violated FEHA by, among other things, harassing Plaintiff.  Under the FEHA, it is an unlawful practice to harass a person because of the person's age, and an employer is required to take all reasonable steps to prevent harassment from occurring.

44.     Defendants' harassment of Plaintiff because of his sexual orientation included, but is not limited to, Kroll Inc.'s employees' anti-gay discriminatory remarks toward Plaintiff in emails and Kroll Inc.'s HR repeated failure to respond to Plaintiff's phone inquiries.

45.     The aforementioned harassing conduct described herein above was unwelcome and sufficiently severe and pervasive that it had the purpose and effect of altering the conditions of Plaintiff's employment and created an intimidating, hostile, abusive and offensive working environment.

46.     As a direct and proximate result of Defendants' conduct as described above, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

47.     As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has suffered and continues to suffer humiliation,

emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

48.     Defendants have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and intentional motive amounting to malice and in conscious disregard of Plaintiff's rights.  Accordingly, Plaintiff requests the assessment of punitive damages against Defendant in an amount appropriate to punish and make an example of them.

49.     Plaintiff is entitled to attorneys' fees and costs under Cal. Government Code § 12965.

## THIRD CAUSE OF ACTION

### (Race Discrimination)

### (Against All Defendants)

50.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

51.     This cause of action is based upon Cal. Government Code §12940, including §12940(a), which makes it an unlawful employment practice for an employer, because of a person's race, to refuse to hire or employ the person, to bar or discharge the person from employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

52.     Plaintiff has met all of the jurisdictional requirements for proceeding with his claims under the California Fair Employment and Housing Act by filing charges that defendants discriminated against him and terminated his employment because of his race in violation of the California Fair Employment and Housing Act.  Plaintiff was issued a Notice of Case Closure/Right-to-Sue Letter which granted Plaintiff the right to bring suit against Defendants.

53.     At all times herein mentioned, Cal. Government Code §12940 was in full force and effect, and was binding upon Defendants.  Defendants violated

this code section by taking adverse action against Plaintiff because of his race, including but not limited to terminating Plaintiff's employment.

54. As a direct, foreseeable, and proximate result of the conduct complained of in this cause of action, Plaintiff has suffered, and continues to suffer, loss of salary, benefits and bonuses plus expenses incurred in obtaining substitute employment and not being regularly employed for months, all to plaintiff's damage in a sum within the jurisdiction of this court, to be ascertain according to proof.

55. As a further direct and proximate result of said defendants' unlawful discrimination, plaintiff has suffered and continues to suffer from emotional and mental distress, and has incurred and continues to incur special and general damages, in a sum within the jurisdiction of this court, to be ascertained according to proof.

56. Plaintiff also prays for reasonable costs and attorney fees against said defendants, as allowed by California Government Code §12965 and any other applicable statutes for plaintiff's prosecution of this action in reference to the time plaintiff's attorney spends pursuing this cause of action as well as any other applicable statutes.

57. Plaintiff is informed, believes, and based thereon, alleges that the outrageous conduct of said Defendants described above were done with oppression and malice by the Plaintiff's supervisor and managers and were ratified by those other individuals who were managing agents of said Defendant employers. These unlawful acts were further ratified by the Defendant employers and done with a conscious disregard for the Plaintiff's rights and with the intent, design and purpose of injuring the Plaintiff.  By reason thereof, the Plaintiff is entitled to punitive or exemplary damages against said Defendants, and each of them, for their acts as described in this cause of action in a sum to be determined at the time of trial.

///

## FOURTH CAUSE OF ACTION

### (Religious Discrimination)

### (Against All Defendants)

58.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

59.     This cause of action is based upon Cal. Government Code §12940, including §12940(a), which makes it an unlawful employment practice for an employer, because of a person's religion, to refuse to hire or employ the person, to bar or discharge the person from employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

60.     Plaintiff has met all of the jurisdictional requirements for proceeding with his claims under the California Fair Employment and Housing Act by filing charges that defendants discriminated against him and terminated his employment because of his religion in violation of the California Fair Employment and Housing Act.  Plaintiff was issued a Notice of Case Closure/Right-to-Sue Letter which granted Plaintiff the right to bring suit against Defendants.

61.     At all times herein mentioned, Cal. Government Code §12940 was in full force and effect, and was binding upon Defendants.  Defendants violated this code section by taking adverse action against Plaintiff because of his religion, including but not limited to terminating Plaintiff's employment.

62.     As a direct, foreseeable, and proximate result of the conduct complained of in this cause of action, Plaintiff has suffered, and continues to suffer, loss of salary, benefits and bonuses plus expenses incurred in obtaining substitute employment and not being regularly employed for months, all to plaintiff's damage in a sum within the jurisdiction of this court, to be ascertain according to proof.

63.     As a further direct and proximate result of said defendants' unlawful discrimination, plaintiff has suffered and continues to suffer from

emotional and mental distress, and has incurred and continues to incur special and general damages, in a sum within the jurisdiction of this court, to be ascertained according to proof.

64.     Plaintiff also prays for reasonable costs and attorney fees against said defendants, as allowed by California Government Code §12965 and any other applicable statutes for plaintiff's prosecution of this action in reference to the time plaintiff's attorney spends pursuing this cause of action as well as any other applicable statutes.

65.     Plaintiff is informed, believes, and based thereon, alleges that the outrageous conduct of said Defendants described above were done with oppression and malice by the Plaintiff's supervisor and managers and were ratified by those other individuals who were managing agents of said Defendant employers. These unlawful acts were further ratified by the Defendant employers and done with a conscious disregard for the Plaintiff's rights and with the intent, design and purpose of injuring the Plaintiff.  By reason thereof, the Plaintiff is entitled to punitive or exemplary damages against said Defendants, and each of them, for their acts as described in this cause of action in a sum to be determined at the time of trial.

## FIFTH CAUSE OF ACTION

**(Retaliation for Complaints of Sexual Orientation Harassment and Discrimination)**

**(Against All Defendants)**

66.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

67.     This cause of action is based upon California statutes prohibiting retaliation for protesting sexual orientation harassment and discrimination in the workplace including, but not limited to:

    a.  California Government Code Sections 12940, *et seq*. which prohibits

employers from retaliating against employees for their complaints of sexual orientation harassment and discrimination;

b. California Government Code Section 12940(h) which prohibits employers from discriminating against a person because the person has opposed any practices forbidden under California Government Code Section 12940, *et seq.*

68.    Plaintiff is informed, believes, and alleges that at all times Plaintiff was employed by defendants, all named Defendants, and each of them, did affirmative acts as described in the general allegations herein that constituted retaliation after plaintiff made the complaints as herein alleged.    Defendants knowingly and intentionally engaged in said unwelcome retaliatory behavior due to Plaintiff's repeated complaints and protestations.

69.    Plaintiff is informed, believes, and alleges that Kroll Inc. and Kroll Associates Inc. are strictly liable for the retaliatory conduct of CEO Conti and other managers because they were supervisory managers of Kroll Inc. and Kroll Associates Inc. who were acting as Plaintiff's supervisors, with the power to deny promotion and fire Plaintiff at all relevant times herein.

70.    As a direct, foreseeable, and proximate result of the conduct of all Defendants named in this cause of action, and each of them, the Plaintiff has suffered, and continues to suffer emotional distress, medical expenses, substantial losses in salary, bonuses, job benefits, and other employment benefits which he would have received from Defendant had he not been subject to harassment, discrimination, and retaliation, in a sum within the jurisdiction of this court, to be ascertain according to proof.

///

///

///

## SIXTH CAUSE OF ACTION

**(Failure to Prevent and/or Remedy Discrimination, Harassment and Retaliation)**

**(Against All Defendants)**

71.     Plaintiff incorporates by reference the foregoing information and allegations as though fully set forth herein.

72.     As described hereinabove and hereafter, the Defendants and each of them, created and maintained a workplace that supported and allowed for harassment, discrimination and retaliation against the Plaintiff, and others similarly situated, for all of those reasons set forth herein.  Despite Defendants' knowledge of same, the Defendants, and each of them, failed to take all reasonable steps necessary, required and appropriate to prevent such discrimination, harassment and retaliation in the employment environment, and particularly against the Plaintiff, from occurring.  Further, the Defendants, and each of them, knew or should have known of the discrimination, harassment and retaliation against Plaintiff described above, yet still failed to conduct an adequate investigation into the nature and substance of the discrimination/harassment/retaliation and then thereafter, and at all times, failed to take immediate and appropriate corrective action so as to discipline any of the offenders despite gaining knowledge of such actions as described herein in spite of failed or non-existent investigations by it.

73.     The response of Defendants, and each of them and/or their agents/employees, to the knowledge of such discrimination occurring in the workplace environment was so inadequate as to establish a deliberate indifference to, or tacit authorization of, the alleged offensive practices, and thereby an affirmative causal link existed and exists between the Defendants' inaction and the injuries suffered by Plaintiff.

74.     By failing to take all reasonable steps necessary to prevent

discrimination, harassment and retaliation, and by failing to properly investigate and remedy the discrimination, harassment and retaliation that occurred, the Defendants committed unlawful employment practices as described and prohibited in California Government Code §12940(k).

75.     In engaging in the aforementioned conduct, Defendants, and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the announced public policies against such practices.

76.     As a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial.

77.     As a result of the aforesaid acts of Defendants, Plaintiff claims general damages for physical and mental pain and emotional distress and aggravation in an amount to be proven at the time of trial.

78.     The above described acts of Defendants, by and through their managing agents, officers or directors, were engaged in with a deliberate, cold, callous, fraudulent and intentional manner in order to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff and Plaintiff's rights.  These unlawful acts were further ratified by the Defendant employers and done with a conscious disregard for the Plaintiff's rights and with the intent, design and purpose of injuring the Plaintiff.   Such acts were despicable, and constitute malice, fraud and/or oppression within the meaning of California Civil Code §3294.   Accordingly, Plaintiff requests an assessment of punitive damages against Defendants, in an amount to be proven at time of trial.

79.     As result of the Defendants' discriminatory, harassing, retaliatory and other illegal and prohibited acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided in and under California

Government Code §12965 and other laws as may apply including California Civil Code §1021.5.

## SEVENTH CAUSE OF ACTION

### (Retaliation in Violation of Cal. Lab. Code § 1102.5 et. seq.)

### (Against All Defendants)

80.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

81.     Plaintiff was retaliated against in violation of the protections of California Labor Code §§ 1102.5, including but not limited to:

(b)     An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

(c) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

82.     Plaintiff was retaliated against and ultimately terminated by Defendants because Plaintiff disclosed information that he had reasonable cause to

believe constituted a violation of state or federal law and that Defendants was required to report it to a governmental agency, and/or that Defendants feared Plaintiff would report to a governmental agency, and/or because Plaintiff refused to participate in an activity that violates a state or federal law.  These violations included the harassment and discrimination Plaintiff faced in the work place. Additionally, Plaintiff was terminated after he discovered and reported a company was publishing reports that contained deliberate misstatements.

83.    As a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial.  Plaintiff claims such amount as damages, along with the civil penalty together with pre-judgment interest pursuant to Civil Code § 3287 and/or any other provision of law providing for pre-judgment interest.

84.    As a result of the aforesaid acts of Defendants, Plaintiff claims damages for emotional distress, general anxiety, grief, shame, humiliation, embarrassment, anger, disappointment and worry, all to his general damage, at a minimum, in excess of the maximum jurisdiction of the court.

85.    As a further direct and proximate result of the wrongful conduct of Defendant, Plaintiff has suffered general damages, losses in earnings, bonuses, deferred compensation, employment benefits, earning capacity, opportunities for advancement, work experience, and out-of-pocket expenses and consequential damages, with all of his damages in excess of the minimum jurisdiction of this Court and according to proof.

86.    The acts of Defendants and each of them were performed with the knowledge and threat of an employer's economic power over its employee.  The above described acts of Defendants, by and through their managing agents, officers or directors, were engaged in with a deliberate, cold, callous, fraudulent and intentional manner in order to injure and damage Plaintiff and/or with a conscious

disregard of Plaintiff and his rights.  The acts and omissions to act by Plaintiff's supervisors, were approved, tolerated, ratified and condoned by CEO Conti.  Such acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil Code § 3294.  Plaintiff requests an assessment of punitive damages against Defendants, in an amount to be proven at time of trial.

87.     Plaintiff will also seek and is entitled to recover attorney's fees in connection with this cause of action under the private attorney general doctrine (Civil Code § 1021.5).

### EIGHTH CAUSE OF ACTION

**(Wrongful Termination in Violation of Public Policy)**

**(Against All Defendants)**

88.     Plaintiff incorporates by reference the foregoing information and allegations as though fully set forth herein.

89.     Defendants discriminated against plaintiff in violation of the Government Code section 12940 *et. seq* by terminating plaintiff's employment because of his sexual orientation, and due to Plaintiff opposition to and refusal to participate in activities which would result in a violation or noncompliance with federal, state, or local regulations, including but not limited to Defendant's discrimination toward Plaintiff due to his sexual orientation, Defendants' failure to follow laws which allow complaints to the SEC.

90.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff also suffered and continues to suffer pain and mental anguish, emotional and physical distress, and injury, humiliation, anxiety, loss of earnings, past and future, and other employment benefits and job opportunities in an amount to be determined at trial, all in excess of the Court's jurisdiction.

91.     Plaintiff prays for reasonable costs and attorney fees against said defendants, as allowed by California Government Code §12965 and any other

applicable statutes for plaintiff's prosecution of this action in reference to the time plaintiff's attorney spends pursuing this cause of action as well as any other applicable statutes.

92.    As more fully stated by the facts alleged above, the wrongful conduct committed and ratified by Defendants and their managing agents was done with a conscious disregard of Plaintiff's rights with the intent to vex, injure, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff, which amounts to oppression, fraud, and malice, as stated in Civil Code §3294.  Plaintiff is, therefore, entitled to punitive damages in an amount to punish defendants and/or make an example of defendants to curb such conduct in the future.

## NINTH CAUSE OF ACTION

**(Violation of Whistleblower Protection under the Sarbanes Oxley Act (18 U.S.C. § 1514A, et seq.)**

**(Against All Defendants)**

93.    Plaintiff incorporates by reference the foregoing information and allegations as though fully set forth herein.

94.    Plaintiff is an employee, and Defendants are employers, within the meaning of the Sarbanes-Oxley At of 2002, Public Law 107-204; 18 U.S.C. §1514A.

95.    Plaintiff engaged in activity that is legally protected under the Sarbanes-Oxley Act by reporting and/or refusing to engage in conduct that he reasonably believed violated the law, and the Act's requirements.

96.    Based on investigation and research, Kroll Associates, Inc. and Kroll, Inc. were subsidiaries of Altegrity, Inc. prior to Altegrity, Inc.'s bankruptcy, which was finalized on August 31, 2015. Since Altegrity, Inc.'s emergence from bankruptcy, Kroll Associates, Inc. and Kroll, Inc. are now subsidiaries of a newly incorporated limited liability corporation—Corporate Risk Holdings, LLC.

97. Altegrity, Inc., Kroll Associates, Inc., and Kroll, Inc., had issued bonds and filed documents for exemptions with the SEC when the bonds were first issued five (5) years prior. Additionally, as part of Altegrity, Inc's bankruptcy proceeding, Altegrity, Inc., Kroll Associates, Inc., and Kroll, Inc., were required to notify various SEC offices of bankruptcy proceedings.

98. Kroll Associates, Inc. and Kroll, Inc. serve as a contractor and subcontractor to public companies. Kroll Associates, Inc. and Kroll, Inc., a risk consultancy which conducts forensic audit, compliance and investment work on behalf of public companies, investment banks, hedge funds and law firms. In Lawson v. FMR LLC, 134 S. Ct. 1158 (2014), the United States Supreme Court held that whistleblower protection under Sarbanes–Oxley (18 U.S.C. Section 1514A (a)) extended to employees of private contractors and subcontractors serving public companies.

99. At all times herein, Kroll Associates, Inc. and Kroll, Inc. did and continues to serve as a subcontractor for Vipshop and its bankers, Deutsche Bank and Goldman Sachs, Vipshop's lawyers, Skadden Arps and Simpson & Thatcher, as well as at least two of Vipshop's institutional owners, Tiger Global and JP Morgan.

100. With respect to Plaintiff's first SEC complaint regarding AmerisourceBergen, Kroll Associates, Inc. and Kroll, Inc. were contractors or subcontractors for Walgreens, a majority owner of AmerisourceBergen. Additionally, Kroll Associates, Inc. and Kroll, Inc. were contractors or subcontractors for AmerisourceBergen's investment bankers through Bank of America Merrill Lynch and their legal counsel Cravath Swaine & Moore.

101. Kroll Associates, Inc. and Kroll, Inc. serve as a contractor or subcontractor to Vipshop and AmerisourceBergen, both SEC regulated entities for the purpose of this cause of action.

102. Defendant's conduct in ostracizing, humiliating and terminating

Plaintiff, as described in more detail above, constitutes unlawful retaliation under the Act.

103.     As a proximate result of Defendants'' actions, Plaintiff has suffered and continues to suffer substantial loss of earnings and other employment benefits, and has suffered and continues to suffer pain, embarrassment, humiliation and mental anguish, all to his damage according to proof.

104.     As more fully stated by the facts alleged above, the wrongful conduct committed and ratified by Defendants and their managing agents was done with a conscious disregard of Plaintiff's rights with the intent to vex, injure, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff, which amounts to oppression, fraud, and malice, as stated in Civil Code §3294.  Plaintiff is, therefore, entitled to punitive damages in an amount to punish defendants and/or make an example of defendants to curb such conduct in the future.

105.     Moreover, Plaintiff has been forced to incur and will incur attorney's fees and costs in prosecuting this action, which Plaintiff seeks to recover.

## TENTH CAUSE OF ACTION

**(Violation of Whistleblower protections of the Dodd-Frank Act Wall Street Reform and Consumer Protection Act (15 U.S.C. §78u-6))**

**(Against all Defendants)**

106.     Plaintiff incorporates by reference the foregoing information and allegations as though fully set forth herein.

107.     Plaintiff is an employee, and Defendants are employer, within the meaning of the Dodd-Frank Wall Street Reform and Consumer Protection Act (15 U.S.C. 78u-6).

108.     Plaintiff engaged in activity that is legally protected under the Dodd-Frank Wall Street Reform and Consumer Protection Act. Specifically, 15 U.S.C. § 78u-6(h)(1)(A)(iii) provides that an employer may not discharge or

otherwise discriminate against an individual who makes "disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201, et seq.) ...." As alleged herein, Plaintiff made disclosures that are protected under the Sarbanes-Oxley Act by reporting and/or refusing to engage in conduct that he reasonably believed violated the law, and the Act's requirements.

109. Defendants' conduct in ostracizing, humiliating and terminating Plaintiff, as described in more detail above, constitutes unlawful retaliation under the Dodd-Frank Wall Street Reform and Consumer Protection Act.

110. Defendants violated three key tenets of the Dodd-Frank Act. First, Defendants denied Plaintiff his anonymity through its efforts to uncover who had made the report about Vipshop. Second, Defendants fired Plaintiff and attempted to deny him his right to court by attempting to convince him to waive his whistleblower claims. Finally, Defendants attempted to convince Plaintiff to waive any bounty he would receive in relation to his whistleblower claims.

111. As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer substantial loss of earnings and other employment benefits, and has suffered and continues to suffer pain, embarrassment, humiliation and mental anguish, all to her damage according to proof.

112. As more fully stated by the facts alleged above, the wrongful conduct committed and ratified by Defendants and their managing agents was done with a conscious disregard of Plaintiff's rights with the intent to vex, injure, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff, which amounts to oppression, fraud, and malice, as stated in Civil Code §3294. Plaintiff is, therefore, entitled to punitive damages in an amount to punish defendants and/or make an example of defendants to curb such conduct in the future.

113. Moreover, under 15 U.S.C. §78u-6(h)(C)(i) - (iii), Plaintiff is entitled for a proven violation to "reinstatement with the same seniority status that

the individual would have had, but for the discrimination," "2 times the amount of back pay otherwise, owed to the individual, with interest" and "compensation for litigation costs, expert witness fees, and reasonable attorneys' fees."

## ELEVENTH CAUSE OF ACTION

### (Defamation)

### (Against All Defendants)

114.     Plaintiff incorporates by reference the foregoing information and allegations as though fully set forth herein.

115.     Plaintiff is informed and believes Defendants, and each of them, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited internal and external publications of defamation, of and concerning Plaintiff, to third persons. These false and defamatory statements included, but were not limited to: Plaintiff was hunting straight white men, Plaintiff failed to nurture and conspired to get rid of an employee, Plaintiff was dating a male co-worker, and derogatory malevolent comments regarding Plaintiff's sexuality.  Additionally, Plaintiff's personal folder was moved onto the Kroll Inc. shared-drive.  This personal folder contained confidential, personal information, including Plaintiff's bank and tax records as well as medical information for Plaintiff's partner.

116.     While the precise dates of these publications are not known to Plaintiff, he recently discovered, and is informed and believes, the publications may have started after her termination by creating false claims regarding plaintiff for the improper purpose of giving the appearance that plaintiff's wrongful and illegal termination was justified.   Plaintiff may also have been compelled to self-publication of these false claims in a search for a new job.   These publications were outrageous, negligent, reckless, intentional, and maliciously published and republished by Defendants, and each of them. Plaintiff is informed and believes that

the negligent, reckless, and intentional publications by Defendants, and each of them, were and continue to be, foreseeable published and republished by Defendants, their agents and employees, and recipients in the community. Plaintiff hereby seeks damages for these publications and all foreseeable republications discovered up to the time of trial.

117. During the above-described time-frame, Defendants, and each of them, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom these Defendants published this defamation are believed to include, but are not limited to, other agents and employees of Defendants, and each of them, and the community, all of whom are known to Defendants, and each of them, but unknown at this time to Plaintiff.

118. The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. These publications included the following false and defamatory statements (in violation of Civil Code §§ 45 and 46) with the meaning and/or substance that Plaintiff: harmed a Kroll Client, used company resources improperly in violation of company policies. These and similar statements published by Defendants, and each of them, expressly and impliedly asserted that Plaintiff was incompetent, dishonest, and a poor employee.

119. Plaintiff is informed, believes and fears that these false and defamatory per se statements will continue to be published by Defendants, and each of them, and has and will result in foreseeable republications by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable

republications, including her own compelled self-publication of these defamatory statements.

120.     The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time.

121.     None of Defendants' defamatory publications against Plaintiff referenced above are true.

122.     The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeable republished by Defendants, and each of them, and has and will result in foreseeable republications by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

123.     Each of the false defamatory per se publications set forth above were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation, to cause him to be fired, to justify his firing, and to retaliate against Plaintiff for prior ill will, rivalry, and disputes in retaliation for his exposing of illegal activities.

124.     Each of these publications by Defendants, and each of them, were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. The Defendants, and each of them, published these statements knowing them to be false, unsubstantiated by any reasonable

investigation and the product of hostility. These acts of publication were known by Defendants, and each of them, to be negligent to such a degree as to be reckless. In fact, not only did Defendants, and each of them, have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendants, and each of them, excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

125.    The above complained-of publications by Defendants, and each of them, were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, employment and future employability. Defendants, and each of them, published these statements, not with intent to protect any interest protected by any privilege, but with negligence, recklessness and/or intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

126.    As a proximate result of the publication and republication of these defamatory statements by Defendants, and each of them, Plaintiff has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

127.    Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any

conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants, and each of them, for these wanton, obnoxious, and despicable acts as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants.

WHEREFORE, Plaintiff prays for judgment as follows:

1. For payment of earned wages, waiting time penalties, and other damages according to proof in an amount to be ascertained at trial;

2. For payment of all statutory obligations and penalties as required by law;

3. For penalties, special and general damages in an amount to be proven at trial;

4. Loss of income incurred and to be incurred according to proof;

5. For punitive damages, as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants;

6. For reasonable attorney's fees and costs, including expert witness fees, pursuant to Section 12965 of the California Government Code;

7. For costs of suit incurred herein;

8. For interest provided by law including, but not limited to, Cal. Civil Code § 3291;

9. That Defendants, their successors, agents, representatives, employees and all persons who act in concert with said Defendants be permanently enjoined from committing any acts of discrimination, retaliation, or

other similar acts, including the violations alleged in all of the Causes of Action herein and as are prohibited by the Fair Employment and Housing Act, California Government Code §§12900 – 12996;

10.    For restitution and other equitable relief; and

11.    Such other relief as the Court deems just and proper.


DATED:  February 3, 2016                    ALEXANDER KRAKOW + GLICK LLP


                                       By:    s/ J. Bernard Alexander, III
                                              J. Bernard Alexander, III
                                              Joshua M. Arnold
                                              Attorneys for Plaintiff
                                              MELVIN GLAPION

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: February 3, 2016          ALEXANDER KRAKOW + GLICK LLP


                                 By:   s/ J. Bernard Alexander, III
                                        J. Bernard Alexander, III
                                        Joshua M. Arnold
                                        Attorneys for Plaintiff

                                       MELVIN GLAPION